UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No. 21-60351-CIV-ALTMAN/HUNT

TRI-COUNTY MOBILE WASH
Inc.,

      Plaintiff,

v.

B&C WASH CORP., et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on Plaintiff's Motion to Enforce Settlement Agreement and to Show Cause ("Motion to Enforce"), ECF No. 26, and Plaintiff's Motion to Reopen Case to Pursue Joinder Claims Against Defendants' Co-Conspirators ("Motion to Reopen"), ECF No. 33.  The Honorable Roy K. Altman referred the Motions to the undersigned for a Report and Recommendation.  ECF No. 38; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1.  Upon thorough review of the record, the Motions, Responses and Replies thereto, the hearing that took place on December 17, 2021, and the applicable law, the undersigned respectfully RECOMMENDS that Plaintiff's Motion to Enforce be GRANTED in part and Plaintiff's Motion to Reopen be DENIED without prejudice for the reasons set forth below.

## BACKGROUND

Tri-County Mobile Wash, Inc. ("Plaintiff") brought this action against Defendants seeking injunctive relief and damages based on violations and breaches of terms in the Franchise Agreement between the Parties.  *See* ECF No. 1.  Plaintiff moved for an *ex*

*parte* temporary restraining order and a preliminary injunction.  ECF No. 5.  This Court granted Plaintiff's *ex parte* motion and temporarily enjoined Defendants from the following:

> (a) disclosing, using, or selling Plaintiff's trade secrets, goodwill, intellectual property, confidential information, or other proprietary material, including but not limited to the customer information related to Plaintiff's customers; (b) diverting or attempting to divert business or customers with which or whom Defendants have had contact during the term of the Franchise Agreement, to any competitor by direct or indirect inducement; and (c) owning, maintaining, operating, engaging in, being employed by, or having any interest in any fleet or truck-washing business located within a five (5) mile radius of Defendants' Territory or within a five (5) mile radius of another Superior Wash location.

ECF No. 13.

Prior to the hearing scheduled on Plaintiff's request for a preliminary injunction, the Parties notified the Court that they had reached a settlement.  ECF No. 21.  The Court entered a consent injunction, dismissed the case with prejudice, and retained jurisdiction over the settlement.  ECF No. 25.  The Court's Order enjoined Defendants from the following:

> (a) disclosing, using, or selling Superior Wash's trade secrets, goodwill, intellectual property, confidential information, or other proprietary material, including but not limited to the customer information of Superior Wash's customers; (b) diverting or attempting to divert business or customers with which or whom the Defendants have had contact with during the term of the Franchise Agreement, to any competitor by direct or indirect inducement; (c) inducing, directly or indirectly, any person who is at that time employed by Superior Wash or by any franchisee of Superior Wash, to leave his or her employment; and (d) owning, maintaining, operating, engaging in, being employed by, or having any interest in any fleet or truck-washing business located within a five (5) mile radius of the Territory or within a five (5) mile radius of another Superior Wash® location planned or in existence as of the date of this Order.

ECF No. 25.

2

The Court also ordered Defendants to:

[P]rovide, within ten (10) days of the date of this Order, copies of: (a) each of the Franchisees' 2019 federal corporate tax returns; (b) 2020 customer invoices from any fleet-washing business(es) operated by any of the Franchisees; (c) customer invoices from any fleet washing business(es) operated by any of the Franchisees from January 1, 2021 to March 15, 2021; and (d) monthly bank statements from any and all accounts held by each of the Franchisees and reflecting all transactions from January 1, 2020 through March 15, 2021. Franchisees shall also provide within sixty (60) days of the Effective Date, a 2020 balance sheet and a 2020 profit and loss statement. The Defendants shall transfer all customer accounts of Superior Wash in an expedited manner and no later than fourteen (14) days from the date of this Order. The Franchisees shall reasonably cooperate with Superior Wash to obtain all necessary customer approvals and to resolve any impracticalities of transfer necessary to transfer the account.

ECF No. 25.

Two months later, Plaintiff moved to enforce judgment on the grounds that Defendants violated the terms listed in the consent judgment.  ECF No. 26.  Defendants filed a response in opposition and Plaintiff filed a reply in support of its motion.  ECF Nos. 31, 32.

On August 10, 2020, Plaintiff moved to reopen the case to allow it to pursue joinder against Jasmine Reyes and Sparkle Truck Washing Corporation, Defendants' alleged co-conspirators. ECF No. 33.  Defendants filed a response to Plaintiff's Motion to Reopen, not opposing the relief sought but opposing the allegations set forth in the motion made towards Defendants.  ECF No. 34.

## DISCUSSION

*Parties' Arguments*

Plaintiff argues that a week after this Court entered the temporary restraining order, Defendants had already opened a new competitive business naming Jasmine Reyes, Defendant Cesar Reyes' niece, as the owner of a company named Sparkle Wash.

Plaintiff contends that this violates the temporary restraining order and consent injunction. Plaintiff also alleges that naming Jasmine Reyes as the owner was only done to hide the identity of Cesar Reyes, who Plaintiff claims is the one profiting from Sparkle Wash.  In support of this claim, Plaintiff contends that Defendant Cesar Reyes is not only renting out warehouse space to Sparkle Wash but also provided Sparkle Wash with fleet-washing trucks.   Plaintiff further argues that Sparkle Wash was given Plaintiff's customer information in violation of the consent injunction and the temporary restraining order.

Defendants respond that the Parties entered settlement discussions in January and February of 2021.  Defendants contend that the Parties executed the settlement agreement on March 31, 2021, and that since the day of executing the agreement, Defendants have not violated any of the agreed-upon terms.  Defendants next argue that they have not engaged in any truck washing or fleet washing as agreed to in the Settlement Agreement. However, Defendants claim they have engaged in janitorial services, which is allowed in the settlement agreement.  Next, Defendants contend that they have no ownership interest in Sparkle Wash.  Defendants allege that Sparkle Wash was opened by a former employee, who in turn took other employees to this new business.  Defendants claim it is common in this line of work for former employees to open their own businesses and argue that former employees are not parties to the settlement agreement.  In fact, Defendants allege they have complained to Plaintiff about former employees leaving and opening competitive businesses in the past, but claim that Plaintiff stated it could nothing to stop former employees' conduct.  Defendants also claim that they have rented their trucks to various third parties including Sparkle Wash. Defendants admit that Sparkle Wash leases a building from an entity that Defendant

Reyes is affiliated with.  However, Defendants claim that these actions—renting out trucks and leasing property—are not prohibited by the agreement.  Regarding the documents, Defendants claim that they understood, based on their former counsels' representation, that the majority of documents needed were already produced.  Defendants claim they learned of Plaintiff's issues for the first time with this Motion.

*The Motions Hearing*

During the hearing held on the Motions, neither Party presented evidence, choosing instead to proceed only with oral argument.  Counsel for Plaintiff claimed that Plaintiff had difficulty obtaining evidence.  Plaintiff conceded that Jasmine Reyes was not a party to the injunction; however, Plaintiff argued that Jasmine Reyes could be joined as a co-conspirator in violating the injunction.  Plaintiff also suggested that if Defendant Reyes were ordered to transfer Plaintiff's clients back to Plaintiff, Plaintiff would see no need to reopen the case.

Regarding the documents at issue, there seemed to be confusion on Defendants' side as to exactly what documents Plaintiff requested.  Accordingly, the undersigned asked Plaintiff's counsel to specifically state which documents she was seeking.  Plaintiff requested the following: full and complete copies of any 2020 customer invoices from any fleet washing business operated by Defendants; all invoices from 1/1/2021 to 3/31/2021; and all bank statements during the same time period, that is, all of 2020 and from 1/1/2021 to 3/31/2021, that will show the payors into those accounts so that Plaintiff can ascertain where the money was coming from.  Plaintiff admitted that it had obtained some of the information sought but contended that the information produced was incomplete.  The undersigned ordered the Parties to confer and requested a proposed order on this issue.

In regard to the customer list, the undersigned asked defense counsel whether Defendant Reyes had turned over confidential information in violation of the consent injunction.  Defense Counsel responded, "not in violation of the injunction."  Defendants' counsel claimed that Jasmine Reyes, through her employment in the company, had already learned of the customer list prior to the injunction or the temporary restraining order being entered.  Plaintiff countered that while employees do sometimes leave and start competitive businesses, under normal circumstances, the prior employee does not start a competitive business with the prior employer's entire customer base.  Plaintiff further argued that while employees in this field may learn of the client's name, they would not normally know the contact person to conduct business with.  Plaintiff's counsel also explained that the franchise agreement between the Parties binds franchisees to obtain an agreement from such employees who have access to proprietary information.  The agreement between the franchisee and its employee must bind the employee not to use such proprietary information during the employee's employment or for a five-year period after the termination of the employment.  Plaintiff also claimed that Defendant Reyes, while engaging in settlement talks regarding the injunction after the temporary restraining order was entered, executed a lease to allow Jasmine Reyes to rent a space and fleet washing trucks.

_Analysis_

"[I]njunctions, including consent decrees, are to be enforced . . . through the trial court's civil contempt power." _Reynolds v. Roberts_, 207 F.3d 1288, 1298 (11th Cir. 2000). The "party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order."

*Mesa v. Luis Garcia Land Ser., Co.*, 218 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016). "A finding of civil contempt must be supported by clear and convincing evidence that: 1) the allegedly violated order was valid and lawful; 2) the order was clear and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Id.* (citing *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir 2010).

Here, the undersigned finds that while Plaintiff has established sufficient proof to be entitled to an Order to Show Cause, Plaintiff has not provided clear and convincing evidence that Defendants have violated the consent injunction at this time. The undersigned notes that Plaintiff informed the Court that it has had a difficult time obtaining evidence. Plaintiff presented the Court with two self-serving affidavits and arguments that, if proven to be true, establish that Defendants possibly violated the consent injunction or the temporary restraining order. However, to find Defendants in civil contempt, more evidence is needed.

As an example, Plaintiff contends that Jasmine Reyes started the competitive business at issue with a list of every customer that Defendants previously serviced. Defendants do not deny that Ms. Reyes obtained the customer information but contend that she obtained the customer information through the course of her employment. Plaintiff counters this response by asserting that the franchise agreement explicitly states that Defendants must obtain a signed agreement from employees that have access to such proprietary information, and that those employees must bind themselves to refrain from using the proprietary information for a period of years. This raises a litany of unanswered questions. For example, did Defendants obtain the agreement from Ms. Reyes? Did Defendants negotiate the settlement agreement knowing that Ms. Reyes

already had the proprietary information? Did Defendants assist in providing the information to Ms. Reyes in violation of the injunction and the temporary restraining order? These questions cannot be answered with the evidence before this Court and are necessary to determine whether Defendants violated the consent injunction.

With that being said, the undersigned recommends that Plaintiff should be allowed to engage in discovery on the limited issues as to whether Jasmine Reyes acted as a co-conspirator in violating the consent injunction; whether Defendants turned over the customer information in violation of either the temporary restraining order or the consent injunction; and whether Defendants engaged in bad faith during settlement negotiations by knowing but not disclosing that the proprietary information that Plaintiff sought to protect had already been distributed to Jasmine Reyes.

In regard to Plaintiff's Motion to Reopen the case and join Ms. Reyes, the undersigned finds that such a motion is premature at this time.  If the above recommended discovery is ordered and it is discovered that Ms. Reyes did in fact participate as a co-conspirator in violating the injunction and temporary restraining order, then Plaintiff should re-raise the issue of joining her to this action.  However, Ms. Reyes was neither a party to the consent injunction nor a party to the franchise agreement.  Thus, joining her now is premature until further information is provided.

Lastly, the undersigned finds that Defendants should produce the documents they agreed to produce in the consent injunction including: full and complete copies of any 2020 customer invoices from any fleet washing business operated by Defendants; all invoices from 1/1/2021 to 3/31/2021; and all bank statements during the same time period, that is, all of 2020 and from 1/1/2021 to 3/31/2021, that will show the payors into

those accounts so that Plaintiff can ascertain where the money was coming from.  The undersigned requested Plaintiff to submit a proposed order on the limited issue of the documents.  However, the proposed order Plaintiff submitted goes beyond the bounds of what this Court requested and included documents that could be produced if the District Court opens discovery on the limited issues mentioned above.

## RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS that Plaintiff's Motion to Enforce Judgment, ECF No. 26, be GRANTED to the extent that:

1.  Defendants shall produce the documents listed in the consent injunction.

2.  An Order to Show Cause should be entered, and discovery be allowed on limited issues, specifically:

    a.  Whether Jasmine Reyes acted as a co-conspirator in violating the consent injunction;

    b.  Whether Defendants turned over the customer information to Ms. Reyes in violation of either the temporary restraining order or the consent injunction; and

    c.  Whether Defendants engaged in bad faith during settlement negotiations by knowing but not disclosing that the proprietary information that Plaintiff sought to protect had already been distributed to Jasmine Reyes.

3.  The undersigned further recommends that Plaintiff's Motion to Reopen, ECF No. 33, be DENIED without prejudice at this time.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 27th day of January 2022.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Honorable Roy K. Altman
All Counsel of Records