UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 21-60531-CIV-ALTMAN/HUNT

TRI-COUNTY MOBILE WASH, Inc.,
d/b/a SUPERIOR WASH,

      Plaintiff,

  v.

B&C WASH CORP., a New York corporation,
and CESAR R. REYES, an individual,

 Defendants.
_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S RENEWED MOTION FOR CONTEMPT

THIS CAUSE is before this Court on Plaintiff's Renewed Motion for an Order to Show Cause, ECF No. 55, and this Court's Order to Show Cause, ECF 67.  The Honorable Roy K. Altman referred this matter to the undersigned for a report and recommendation.  Upon thorough review of the Motion and responses thereto, the record, applicable law, as well as the evidence and arguments of counsel at a September 7, 2023 evidentiary hearing, the undersigned RECOMMENDS that Plaintiff's Motion be granted in part for the reasons set forth below.

### BACKGROUND

Tri-County Mobile Wash, Inc., ("Plaintiff") brought this action against B&C Wash Corp. and its owner, Cesar Reyes ("Defendants"), seeking injunctive relief and damages based on violations and breaches of terms in a Franchise Agreement between the Parties.  See ECF No. 1.  Plaintiff moved for an *ex parte* temporary

restraining order and a preliminary injunction. ECF No. 5. This Court granted Plaintiff's *ex parte* motion and temporarily enjoined Defendants from the following:

> (a) disclosing, using, or selling Plaintiff's trade secrets, goodwill, intellectual property, confidential information, or other proprietary material, including but not limited to the customer information related to Plaintiff's customers; (b) diverting or attempting to divert business or customers with which or whom Defendants have had contact during the term of the Franchise Agreement, to any competitor by direct or indirect inducement; and (c) owning, maintaining, operating, engaging in, being employed by, or having any interest in any fleet or truck-washing business located within a five (5) mile radius of Defendants' Territory or within a five (5) mile radius of another Superior Wash location.

ECF No. 13.

Prior to the hearing scheduled on Plaintiff's request for a preliminary injunction, the Parties notified the Court that they had reached a settlement. ECF No. 21. The Court entered a consent injunction, dismissed the case with prejudice, and retained jurisdiction over the settlement. ECF No. 25. The Court's Order enjoined Defendants from the following:

> (a) disclosing, using, or selling Superior Wash's trade secrets, goodwill, intellectual property, confidential information, or other proprietary material, including but not limited to the customer information of Superior Wash's customers; (b) diverting or attempting to divert business or customers with which or whom the Defendants have had contact with during the term of the Franchise Agreement, to any competitor by direct or indirect inducement; (c) inducing, directly or indirectly, any person who is at that time employed by Superior Wash or by any franchisee of Superior Wash, to leave his or her employment; and (d) owning, maintaining, operating, engaging in, being employed by, or having any interest in any fleet or truck-washing business located within a five (5) mile radius of the Territory or within a five (5) mile radius of another Superior Wash® location planned or in existence as of the date of this Order.

ECF No. 25.

The Court also ordered Defendants to:

[P]rovide, within ten (10) days of the date of this Order, copies of: (a) each

>of the Franchisees' 2019 federal corporate tax returns; (b) 2020 customer invoices from any fleet-washing business(es) operated by any of the Franchisees; (c) customer invoices from any fleet washing business(es) operated by any of the Franchisees from January 1, 2021 to March 15, 2021; and (d) monthly bank statements from any and all accounts held by each of the Franchisees and reflecting all transactions from January 1, 2020 through March 15, 2021. Franchisees shall also provide within sixty (60) days of the Effective Date, a 2020 balance sheet and a 2020 profit and loss statement. The Defendants shall transfer all customer accounts of Superior Wash in an expedited manner and no later than fourteen (14) days from the date of this Order. The Franchisees shall reasonably cooperate with Superior Wash to obtain all necessary customer approvals and to resolve any impracticalities of transfer necessary to transfer the account.

ECF No. 25.

Two months later, Plaintiff moved to enforce judgment on the grounds that Defendants violated the terms listed in the consent judgment by allowing Jasmine Reyes, the daughter of Cesar Reyes, to start up a competing business with confidential customer information. ECF No. 26. Defendants filed a response in opposition, and Plaintiff filed a reply in support of its motion. ECF Nos. 31, 32.

Plaintiff moved to reopen the case to allow it to pursue joinder against Jasmine Reyes and her competing business, Sparkle Truck Washing Corporation, Defendants' alleged co-conspirators. ECF No. 33. The undersigned issued a report and recommendation advising the District Court the motion to enforce should be granted to the extent of entering an order to show cause and discovery should be allowed on limited issues regarding Jasmine Reyes and her company's involvement. ECF No. 49. The District Court adopted the report and recommendation, allowed the Parties to engage in discovery on the limited issues, and ordered Plaintiff to file a renewed motion to enforce judgment if the ordered discovery warranted such a motion. ECF No. 54. After engaging in the permitted discovery, Plaintiff moved for an order finding Defendants in contempt for

violations of the TRO and the Consent Injunction. ECF No. 55. The undersigned granted Plaintiff's request for an Order to Show Cause and required Defendants to explain why they should not be held in contempt for violating the TRO and Consent Injunction. ECF No. 67. An evidentiary hearing was conducted on the matter on September 7, 2023, and the matter is now ripe for resolution.

## LEGAL STANDARD

A party seeking an order of contempt bears the initial burden of demonstrating by clear and convincing evidence that the alleged contemnor has violated a valid court order. *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). The "clear and convincing" evidence must establish that an order was violated and that (i) the allegedly-violated order was valid and lawful; (ii) the order was clear and unambiguous; and (iii) the alleged violator had the ability to comply. *Id.* at 1516; *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1545 (11th Cir. 1996).

The focus of a court's inquiry in civil contempt proceedings is not the subjective intent of the alleged contemnors; rather, it is whether their conduct objectively complied with the terms of the order. *Khimani*, 892 F.2d at 1516. Thus, alleged contemnors must do more than merely assert they did not violate the order; they must introduce evidence to support their claim. *Chanel, Inc. v. Krispin,* No. 08-23439-CIV-TORRES, 2010 WL 482237, at *3 (S.D. Fla. 2010). "Still, 'substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance.'" *PlayNation Play Sys., Inc. v. Velex Corp.*, 939 F.3d 1205, 1212-13 (11th Cir. 2019) (quoting *Khimani,* 892 F.2d at 1516).

4

A court may assume an order is valid if the alleged contemnors did not challenge it. *S.E.C. v. Pension Fund of Amer., L.C.,* No. 05-20863-CIV-MOORE, 2006 WL 1104768 at *7 (S.D. Fla. Mar. 28, 2005). Further, a defendant waives any objection to the specific terms of an injunction when they were at all times represented by competent counsel, voluntarily agreed to be bound by its terms, did not complain to the court about the adequacy of the terms, or seek to have them modified. *Id.* at *8 (citing *Combs v. Ryan's Cole Co., Inc.*, 785 F.2d 970, 979 (11th Cir. 1986)).

## ANALYSIS

There is no real dispute that the TRO and Consent Injunction were valid, lawful, clear, and unambiguous. What appears to be in dispute is whether Defendants have violated the terms of the Orders, and, if so, whether Defendants had the ability to comply. Defendants allege they had no control or knowledge of the actions of their employee, Jasmine Reyes, who opened the competing business, and claim that since the day of executing the settlement agreement, Defendants have not violated any of the terms to which they agreed. Defendants contend they have not engaged in any truck washing or fleet washing, as agreed to, but have instead engaged only in janitorial services permitted under the settlement agreement. The undersigned addresses these arguments below.

I.      <u>Violations of the TRO and Consent Injunction.</u>

The undersigned finds the evidence shows Defendants have violated the terms of both the TRO and the Consent Injunction. It is undisputed that, while the TRO was in place, Cesar Reyes allowed Jasmine Reyes to access the email account associated with his franchised business, and this access allowed Jasmine Reyes to solicit the customers to bring their business to Sparkle Wash. The result is that Sparkle Wash immediately

began providing services to customers that were previously serviced by Plaintiff's franchise, allowing Sparkle Wash to assume the business of the former franchise. Although Defendants argued Cesar Reyes neither facilitated this conduct nor condoned it, they likewise did not present any evidence that he made any effort to protect Plaintiff's customer information, including any evidence of any attempt to limit Jasmine Reyes' access to the information.  Despite Defendants' contention that, at worst, Defendants violated only the TRO, the terms of both the TRO and the Consent Injunction clearly disallow disclosure of Plaintiff's customer information and impose on Defendants an ongoing duty to protect that information.  It makes little sense, as Defendants appear to argue, to think that the Consent Injunction would function as a "get out of jail free" card for as-yet-undiscovered breaches of the TRO, the harms of which carried on well into the term of the Consent Injunction.

Put simply, Defendants' duty to Plaintiff regarding Plaintiff's confidential information did not end when the TRO ended.  Defendants plainly failed to live up to the duty, and this is enough to find Defendants violated the terms of both the TRO and the Consent Injunction.  An offending party may not merely assert an inability to comply but must show "that he has made 'in good faith all reasonable efforts to comply.'"  *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988) (quoting *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976)).  There is no evidence before this Court demonstrating Cesar Reyes made any effort to limit access to the information or the damage done by its release.  Allowing someone, even an employee, to take this information for themselves for use outside the franchise is a clear violation of this Court's orders, and this alone would justify a contempt finding.

6

Further, Plaintiff submitted evidence that Cesar Reyes should have been well aware of the business that emerged from Jasmine Reyes' use of Plaintiff's information. For instance, Plaintiff submitted an email dated three days after the injunction was entered, directed to Cesar Reyes, sent to the email account associated with Jasmine Reyes' new business. ECF No. 55-1, Ex. M. Plaintiff also submitted evidence of other communications related to Sparkle Wash directed to Cesar Reyes, including evidence that Diane DiMartino, the accountant for both B&C and Sparkle Wash, regularly copied both Cesar and Jasmine on emails relating to Sparkle Wash's business. *Id.*, Ex. N, D. Even under a reading most favorable to Defendants, Cesar Reyes had notice of the ongoing harm to Plaintiff's business caused by his failure to live up to the duties imposed under the TRO and Consent Injunction, but he failed to take any steps to prevent or mitigate that damage.

II. Sanctions for Defendants' Contempt.

Having found Defendants in contempt, the question then turns to what penalties they should face for the violation. Plaintiff seeks a compensatory sanction in the form of lost profits caused by Defendants' contempt, a two-year extension of the Consent Injunction, a daily fine for any future noncompliance with the continuing restrictions in the Consent Injunction, and an award of attorneys' fees and costs.

"District courts have broad discretion in fashioning civil contempt sanctions" for failure to comply with an order of the court. *Khimani*, 892 F.2d at 1519. A compensatory fine ordering a disobedient party to disgorge all amounts earned in violation of an injunction order may be an appropriate civil sanction for contempt. *FTC v. Leshin*, 618 F.3d 1221, 1239 (11th Cir. 2010). The Court has particularly broad discretion to impose

7

these kinds of noncoercive sanctions and is limited only by the requirement that they be compensatory. *Id.*

Plaintiff reasonably requests compensation for profits lost due to Defendants' contempt and asserts that its lost profits are $11,888.01 per month from April 1, 2021, through July 31, 2023. ECF No. 90. The undersigned finds this to be a reasonable and non-speculative assessment of gross lost profits. However, the Court notes Brett James, Director of Franchise Development, testified that Plaintiff's current franchisee in the area does produce some revenue. Further, the undersigned finds the lost profits calculation fails to account for the natural ebb and flow of clients when new management takes over. The undersigned therefore finds Plaintiff's estimated lost profits should be cut by twenty-five (25) percent. Additionally, the undersigned finds Plaintiffs should be compensated only for lost profits through March 31, 2023, the date the Consent Injunction expired, and that Plaintiff is not entitled to an award of lost profits beyond that date.[1] Accordingly, Plaintiffs should be awarded $8,916.01 in lost monthly profits, for twenty-three (23) months, for a total award of $205,068.23.[2]

---

[1] Relatedly, Plaintiff also asks this Court to extend the restrictions in the Consent Injunction by two years and impose fines for further noncompliance. The undersigned finds such an extension is unnecessary. The initial consent injunction expired on March 31, 2023. Given the recommendation that Plaintiff be compensated for lost business through that time, Plaintiff will receive the economic benefit of its bargain. The undersigned finds further business restraints on individuals not party to this lawsuit would be unduly punitive. Therefore, the Court recommends not granting an extension of the restrictions in the Consent Injunction.

[2] Defendants request any award be reduced by $29,707.78, which Defendants argue Plaintiff owes pursuant to the Settlement Agreement. As Plaintiff points out, any breach of the non-disclosure obligation forfeits that amount. As the undersigned finds that Defendants have breached this obligation, they are not entitled to a reduction.

The undersigned also finds Plaintiff should be awarded attorneys' fees and costs, to be determined following a separate motion for attorneys' fees and costs in accordance with the local rules.  The undersigned notes an award of attorneys' fees in civil contempt proceedings is limited to those reasonably and necessarily incurred in the attempt to enforce compliance.  *Abbott Labs v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000).

## RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS Plaintiff's Motion be GRANTED IN PART and DENIED IN PART.  The Motion should be granted to the extent that

1. Defendants should be held in contempt for violations of this Court's TRO and Consent Injunction.
2. Defendants should be sanctioned, jointly and severally, in the amount of $205,068.23 as a compensatory sanction for profits lost by Plaintiff from February 1, 2021, to March 31, 2023.
3. Plaintiff should be awarded reasonable attorneys' fees and costs incurred in obtaining Defendants' compliance with the TRO and Consent Injunction. Plaintiff shall file a separate motion for attorneys' fees and costs in compliance with S.D. Local Rule 7.3.

The Motion should otherwise be denied.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district.  28 U.S.C.

§ 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 15th day of December 2023.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable Roy K. Altman

All Counsel of Record