UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-60351-ALTMAN/Hunt

**TRI-COUNTY MOBILE WASH, INC.**,

 *Plaintiff*,

v.

**B&C WASH CORP.** *et al.*,

 *Defendants.*

_____/

## ORDER

For the reasons stated on the record at the September 30, 2024 status conference, we hereby **ADOPT IN PART** and **DENY IN PART** Magistrate Judge Hunt's Report and Recommendation (the "R&R") [ECF No. 106] on the Plaintiff's Motion for Contempt (the "Contempt Motion") [ECF No. 55].

### BACKGROUND

The Plaintiff is Tri-County Mobile Wash, Inc., a fleet- and truck-wash franchisor. The Defendants are Tri-County's former franchisee, B&C Wash Corp., and B&C's sole owner, Cesar Reyes. Tri-County brought this action on February 12, 2021, to enjoin the Defendants from violating their franchise agreement—specifically, the provisions preventing the Defendants from misusing Tri-County's trade-secret customer lists. *See* Compl. [ECF No. 1]. Magistrate Judge Hunt quickly granted a temporary restraining order (the "TRO"), enjoining the Defendants from using Tri-County's trade secrets, taking any of Tri-County's business or customers, and owning any competing fleet- or truck-washing business within five miles of Tri-County's franchise territory. *See* TRO [ECF No. 13].

Unbeknownst to Tri-County, Cesar Reyes almost immediately began violating the TRO by allowing his daughter Jasmine to access his B&C Wash email, which contained customer information

and other Tri-County trade secrets.[1] *See* R&R at 5–6. Jasmine used that information to start a successor wash business, soliciting away customers who'd been previously served by Tri-County. *Ibid.* While Jasmine capitalized on Tri-County's trade secrets, Cesar settled with Tri-County, *see* Notice of Settlement [ECF No. 21]—and, based on that settlement, Magistrate Judge Hunt entered a Consent Injunction on April 14, 2021, *see* Consent Injunction [ECF No. 25]. Like the TRO, the Consent Injunction enjoined the Defendants from using Tri-County's trade secrets or operating (or having any interest in) any fleet- or truck-wash business within five miles of the Plaintiff's franchise territory. *See id.* at 4.

Two months after Magistrate Judge Hunt entered the Consent Injunction, Tri-County discovered Jasmine's competing business, surmised that Cesar was involved, and moved to enforce the judgment. *See* Enforcement Motion [ECF No. 26]. Tri-County also moved to join Jasmine to the case. *See* Joinder Motion [ECF No. 33]. Magistrate Judge Hunt recommended that we deny the Joinder Motion without prejudice, finding it premature. *See* R&R re Plaintiff's Enforcement and Joinder Mots. at 8 [ECF No. 49]. But he also recommended that we grant limited discovery into Jasmine's connection to the Defendants and order the Plaintiff to move for contempt sanctions if discovery so warranted. *Id.* at 7–8. We agreed, *see* Order Adopting R&R [ECF No. 54], and, after collecting the necessary discovery, Tri-County moved to hold the Defendants in contempt—but not to join Jasmine, *see generally* Contempt Mot. That motion prompted Magistrate Judge Hunt to order the Defendants to show cause why they should not be held in contempt for violating the TRO and Consent Injunction. *See* Order to Show Cause [ECF No. 67]. In the Contempt Motion, Tri-County sought a compensatory award of its estimated lost profits, attorneys' fees, and an extension of the Consent Injunction for another two years against the original Defendants *and* Jasmine. *See* Contempt Mot. at 2–3.

---

[1] For clarity, we'll refer to Cesar and Jasmine by their first names.

Magistrate Judge Hunt held an evidentiary hearing to determine whether the Defendants were in contempt of the TRO and Consent Injunction, and, if so, to assess an appropriate remedy. *See* Paperless Minute Entry for Evidentiary Proceedings Held on September 7, 2024 (the "September 7 Hearing") [ECF No. 100]. After reviewing the evidence, he concluded that the Defendants had contemptuously violated the TRO and the Consent Injunction when Cesar allowed Jasmine to access and use Tri-County's trade secrets. *See* R&R at 5–7. Based on that finding, Magistrate Judge Hunt awarded Tri-County 75% of the compensatory award it sought, as well as attorneys' fees and costs. *Id.* at 8–9. But he declined to extend the injunction against *any* party, finding it "unnecessary." *Id.* at 8 n.1. He had two reasons for that: *first*, he reasoned that the compensatory damages award gave Tri-County the full economic benefit of the Consent Injunction, and that was enough; *second*, as to Jasmine and her business, he reasoned that it would be unduly punitive to enjoin "individuals not party to this lawsuit." *Ibid.*

Tri-County objected only to Magistrate Judge Hunt's refusal to extend the injunction, protesting that a continuing injunction against both the Defendants *and* Jasmine was "the only relief that [would] allow [it] to regain its lost business in Defendants' former franchised territory." Obj. at 1 [ECF No. 107]. We now review that objection.

**STANDARD OF REVIEW**

"Where a proper, specific objection to the magistrate judge's report is made, it is clear that the district court must conduct a *de novo* review of that issue." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992)). The Plaintiff in this action properly and specifically objected to one discrete part of the R&R: the legal conclusion that an injunction against both Defendants and Jasmine Reyes, a non-party, is not warranted. So, we'll review that conclusion *de novo*. "If . . . only partial objection is made [to the magistrate judge's report], the district court judge reviews those unobjected portions for clear error." *Id.* (quoting *Johnson v. Zema Sys.*

*Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)). Since the Plaintiff does not object to any other factual or legal conclusion, we'll review the rest of the R&R for clear error. As we have previously noted, "to be clearly erroneous, a decision must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Melero v. Kijakazi*, 2022 WL 3154786, at *1 (S.D. Fla. May 20, 2022) (Altman, J.) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

## ANALYSIS

Upon *de novo* review, we conclude that Cesar Reyes and B&C should be enjoined—again—from operating or having any interest in any fleet- or truck-washing business. The record is clear that, beginning in February 2021, Cesar indirectly induced Jasmine to violate the Consent Injunction and subsequently acquiesced to those violations. As Magistrate Judge Hunt noted, the evidence shows that, while the TRO was in place, Cesar "allowed Jasmine to access the email account associated with his franchised business." R&R at 5. Jasmine testified that, using Cesar's business email, she forwarded herself "important" contact information that allowed her to solicit Cesar's clients. *See* Contempt Mot. Ex. B, Depo. Tr. of Jasmine Reyes at 29:7–30:18 [ECF No. 55-1]. There was no evidence that Cesar made "any effort to protect Plaintiff's customer information [or] limit Jasmine['s] access to the information." R&R at 6. In fact, Jasmine testified that she was able to access that business email as late as "sometime *after* April of 2021," Tr. at 28:11–17 (emphasis added)—after *both* the TRO *and* the Consent Injunction were entered. And, as of the "second week of March [2021]," Cesar hadn't so much as mentioned to Jasmine the TRO or his settlement negotiations with Tri-County. *Id.* at 51:2–18.

Cesar was all the while "aware of the business that emerged from Jasmine['s] use of the Plaintiff's information." R&R at 7. His corporate accountant "regularly copied both Cesar and Jasmine on emails relating" to Jasmine's business, *ibid.*, and Cesar occasionally "forward[ed] emails intended for Jasmine to her" from his business email, *see* Contempt Mot. Ex. H, Defendants' Answers to

4

Interrogatories at 2 [ECF No. 55-1]. Jasmine outright told him in mid-March 2021 that "a lot of the customers that he once had are now mine." Tr. at 50:2–51:7. That blunt admission evidently still wasn't enough to prompt Cesar to divulge his obligations under the TRO. *Id.* at 51:8–22.

Troublingly, there's even evidence that Cesar *directly* violated the TRO. On April 14, 2021, one of the former Tri-County customers solicited by Jasmine sent a message to Jasmine's brand-new business email address—a message addressed to Cesar, asking him to correct a washing invoice "per [their] conversation." Contempt Mot. Ex. N [ECF No. 55-1]. Now, Jasmine testified that she sometimes lied to former Tri-County customers about Cesar's continued proximity to her business to reassure them that she could step into Cesar's shoes:

> Q. You say, in the second sentence [of an email to a former Tri-County customer], "Cesar is no longer doing truck washing *for the time being*."
>
> A. Uh-huh. Well, I told different customers different things, because I didn't want them to kind of get a little anxious going with somebody new. So I just said whatever to make them feel comfortable.
>
> Q. So is it your testimony that you [we]re not being honest with this customer?
>
> A. Yeah, I wasn't honest with some customers. I said *he was vacationing*. I told other people many different things, that *he was taking time off*. It varied what I told the customers.

Tr. 59:19–60:16 (emphasis added). Even so, we're skeptical that the customer would've believed he'd had a "conversation" with Cesar if he hadn't *actually* conversed with Cesar. Nor can we fathom why the customer would have messaged Cesar at Jasmine's business email if the customer did not understand Cesar to be associated with Jasmine's business. By discussing wash billing with a former Tri-County customer in connection with a Tri-County competitor *inside* Tri-County's franchise territory, Cesar plainly violated the TRO.

Tri-County's theory of this case is that "Cesar Reyes, not Jasmine Reyes, is operating the compet[ing] truck [wash] business," and Tri-County believes that it "proved" as much at the September 7 Hearing. Obj. at 5. The Plaintiff points out that, insofar as Cesar is still competing with Tri-County, it has *not* obtained the full economic benefit of the Consent Injunction. *Id.* at 4–5. All it's getting is a royalty—and a reduced one at that. *Id.* at 3–4. Although Tri-County is overstating what it proved at the hearing, even the limited discovery we allowed yielded evidence that Cesar continuously violated *at least* the TRO from the moment it was entered up to when Tri-County filed its Contempt Motion. And, since he evidently discussed invoicing with Jasmine's customers from Jasmine's business email as late as April 14, 2021, we find it probable that he continued to do so after the Consent Injunction was entered. As a result, it's not clear that Tri-County *ever* had the benefit of the Consent Injunction.

So, we agree with Tri-County that the Defendants must be enjoined, and we accordingly will not adopt the R&R to the extent it recommends otherwise. Happily, Tri-County itself agreed in its Objection that an injunction against the Defendants "is likely to be sufficient to restore Superior Wash's benefit of the bargain." Obj. at 6.

We disagree with Tri-County, though, that Jasmine and her business should be enjoined too. We may enjoin a party, a party's officers and agents, and anyone in active concert or participation with the party or its officers and agents. *See* FED. R. CIV. P. 65(d)(2). We may also enjoin non-parties "under the 'general rubric of privity,' a category that includes 'nonparty successors in interest' and 'nonparties otherwise legally identifiable with the enjoined party.'" *United States v. Robinson*, 83 F.4th 868, 879 (11th Cir. 2023) (quoting *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017)). We may even enjoin "those who aid and abet those in privity with an enjoined party." *Ibid.*

But we may only enjoin persons "who receive actual notice of [the injunction] by personal service," FED. R. CIV. P. 65(d)(2), and it's unclear when Jasmine did. Jasmine incorporated her

6

business—with Cesar's assistance, of course—on February 24, 2021. *See* Contempt Mot. Ex. D, Attach. 3, Incorporation Receipt [ECF No. 55-1]. Her uncontroverted testimony was that she only learned of the TRO when she received a subpoena from Tri-County sometime in early April. *See* Tr. at 35:16–18. She did rely on Tri-County's trade secrets to build her business, but she may not have knowingly contravened the TRO. Moreover, Tri-County chose not to renew its motion to join Jasmine to this case. And, as we noted, Tri-County agreed in its Objection that an injunction against just the Defendants would likely be sufficient. We therefore adopt the R&R insofar as it recommends not issuing an injunction against Jasmine. This does not mean that Jasmine is absolved of all liability or that she cannot be enjoined in a later proceeding.

As to the rest of the R&R, we find no clear error. After reviewing all the filings and listening to the audio transcript of the September 7 Hearing, we conclude that the Defendants indeed contemptuously disregarded the TRO and the Consent Injunction. We also conclude that Magistrate Judge Hunt's award of compensatory damages and attorneys' fees was accurate and warranted. So, we adopt those portions of the R&R and the ancillary factual findings on which they're based.

## CONCLUSION

Accordingly, the Court hereby **ACCEPTS** and **ADOPTS** the R&R except insofar as it recommends that the Consent Injunction not be extended against both Defendants. With respect to that issue, we **ORDER** that commencing immediately and continuing until **October 2, 2026, at 11:59 p.m.**, each Defendant—whether acting directly or indirectly for its own benefit or on behalf of or in connection with any person or legal entity, *including Jasmine Reyes*—is restrained and enjoined from:

1. disclosing, using, selling, or allowing the disclosure, use, or sale of, Tri-County's trade secrets, goodwill, intellectual property, confidential information, or other proprietary

    material, including, but not limited to, the customer information of Tri-County's customers;

2. diverting or attempting to divert business or customers with which or whom the Defendants have had contact with during the term of the Franchise Agreement, to any competitor by direct or indirect inducement;

3. inducing, directly or indirectly, any person who is at that time employed by Tri-County or by any franchisee of Tri-County, to leave his or her employment; and

4. owning, maintaining, operating, engaging in, being employed by, assisting with, providing any financial or material support to, or having any financial or managerial interest in any fleet- or truck-washing business located within a five-mile radius of Tri-County's franchise territory or within a five-mile radius of any Tri-County or Tri-County franchise location planned or in existence as of the date of this Order, *including* any fleet- or truck-washing business owned, operated, controlled, or directed, in whole or in part, by Jasmine Reyes.

If the Defendants fail to fully comply with this Order, the Court will impose sanctions, including, but not limited to, a daily fine against the Defendants.

    Finally, so that there are no future misunderstandings, we order Tri-County to effect personal service of a copy of this Order and of the R&R on Jasmine Reyes.

**DONE AND ORDERED** in the Southern District of Florida on October 2, 2024.



**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record